US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 16 2019

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CASE NO. 5:19CR50078-001 |
| v. | ) |
| | ) 18 U.S.C. § 2 |
| BENJAMIN GRAY BURRIS | ) 18 U.S.C. § 1343 |
| | ) 18 U.S.C. § 1346 |
| | ) 18 U.S.C. § 1349 |

**INDICTMENT**

THE GRAND JURY CHARGES:

**GENERAL ALLEGATIONS**

At all times material to this Indictment, unless otherwise set forth, with all dates and times alleged to be "on or about" or "in or about," and all amounts alleged to be "approximately:"

1. BENJAMIN GRAY BURRIS is an orthodontist who, during the relevant period, lived in Fort Smith and Fayetteville, Arkansas, which are located in the Western District of Arkansas. BURRIS was the co-owner in several businesses that operated orthodontic clinics throughout the State of Arkansas, including: Benjamin G. Burris, DDS, MDS, PA; Gateway Ventures, LLC; Oliver-Burris, LLC; Smile Systems, LLC; Snaggle Tooth Management, LLC; and Bethel Burris, PLLC (formerly Bethel Burris Oliver, PLLC). BURRIS's clinics were located throughout the State of Arkansas, including locations in the Western District of Arkansas.

2. Jeremy Hutchinson is a former Arkansas State Senator who was first elected in 2010, and then re-elected in 2012 and 2014. Senator Hutchinson's district is comprised of portions of Pulaski County and Saline County, Arkansas. As a Senator, Hutchinson had the responsibility and authority to, among other things, draft and vote on proposed bills and legislation, place holds

1

on agency budgets, and request interim study proposals. As a Senator, Hutchinson owed a duty of honest services to the State of Arkansas and its citizens. Prior to his service in the Arkansas Senate, Hutchinson served as an Arkansas State Representative in the Arkansas House of Representatives from 2000 to 2007. Hutchinson is also an attorney licensed in the State of Arkansas. Hutchinson had previously operated his own law firm, Hutchinson Law Firm, as a sole proprietorship.

3. From in or about February 2014 to in or about November 2016, the entities listed above affiliated with BURRIS and his associates paid Hutchinson Law Firm an approximate total of $157,500.

4. Benjamin G. Burris, DDS, MDS, PA, (Burris DDS) was an Arkansas for-profit company registered with the Secretary of State in June 2004 by BURRIS, with a principal address in Fayetteville, Arkansas, which is in the Western District of Arkansas. From in or about May 2014 to in or about December 2014, Burris DDS paid Hutchinson Law Firm a total of $40,000.

5. Gateway Ventures, LLC (Gateway Ventures), was an Arkansas limited liability company incorporated in February 2013 by BURRIS's spouse, with a principal address in Jonesboro, Arkansas. Gateway Ventures paid Hutchinson Law Firm $20,000 in or about February 2014.

6. Snaggle Tooth Management, LLC (Snaggle Tooth), is an Arkansas limited liability company incorporated in November 2014, with a principal address in Fayetteville, Arkansas, which is in the Western District of Arkansas, also known by the name "Smile Systems." From in or about February 2015 to in or about August 2015, Snaggle Tooth paid Hutchinson Law Firm a total of $35,000.

7. Smile Systems, LLC, (Smile Systems) is an Arkansas limited liability company incorporated in August 2015 by Employee A, with a principal address in Fayetteville, Arkansas, which is in the Western District of Arkansas. From in or about November 2015 to in or about November 2016, Smile Systems paid Hutchinson Law Firm a total of $62,500.

8. Employee A was employed by BURRIS to be the chief executive officer of his orthodontic clinic businesses from July 2013 to January 2016.

9. Person A was BURRIS's insurance agent and friend.

10. Person B is a dentist and friend of BURRIS.

11. Person C is an orthodontist and friend of BURRIS.

12. Oath Holdings, Inc. ("Oath"; formerly known as Yahoo Holdings, Inc.) maintains mail servers for email communications sent and received by Yahoo users. From February 2014 through February 2017, Oath did not maintain any email servers in Arkansas. Thus, any email communications sent to or from a Yahoo user located in Arkansas would necessarily transit an Oath mail server located outside of Arkansas.

13. Prior to August 2017, an Arkansas law known as the Dental Practices Act stated that any dentist licensed by the Arkansas State Board of Dental Examiners (ASBDE) as a specialist, such as an orthodontist, "must limit his or her practice to the specialty in which he or she is licensed except in an emergency situation," and that "failure to limit his or her practice . . . shall be cause for the specialist license to be revoked or suspended." Arkansas Code Annotated § 17-82-305(g) (2003). This restriction imposed by the Dental Practices Act was often known as a specialist restriction.

14. Beginning in June 2013, the ASBDE, the state agency responsible for governing dental practitioners and enforcing the provisions of the Dental Practices Act; received complaints that BURRIS was having dental hygienists provide hygienic services to patients who were not

3

orthodontic patients, in contravention of the specialist restriction in the Dental Practices Act. In September 2013, BURRIS appeared before the ASBDE.

15. On or about September 10, 2013, Hutchinson opened a bank account ending in 7635 at Arvest Bank (Arvest) in the name of "Jeremy Y Hutchinson doing business as Hutchinson Law Firm." Arvest is headquartered in Lowell, Arkansas, which is in the Western District of Arkansas. Checks processed by Arvest are routed through servers located in Lowell, Arkansas, which is in the Western District of Arkansas, Fayetteville Division.

16. In November 2013, BURRIS entered into a "Consent Order" with the ASBDE in which he acknowledged that having dental hygienists provide hygienic services to patients who were not orthodontic patients was in violation of the Dental Practices Act, and agreed to suspend his dental hygiene program at all of his Arkansas clinics unless it was related to orthodontic services.

17. On or about February 11, 2014, BURRIS sent a text message to Person A and others stating, "The chair of the Arkansas state legislature's budgetary commission just told us he will put a freeze on the [ASBDE] budget—TODAY!" Person A responded by asking, "Who is the chair?", to which BURRIS stated, "Jeremy Hutchinson."

18. On or about February 11, 2014, Hutchinson, as a member of the Senate Joint Budget Committee, placed a hold on the budget appropriation for the ASBDE.

19. On or about February 11, 2014, Hutchinson, BURRIS, and Employee A hosted a dinner at a restaurant in Little Rock, Arkansas, attended by several Arkansas legislators invited by Hutchinson, and others, for the purpose of discussing BURRIS's legislative objectives.

20. On or about February 20, 2014, BURRIS sent a text message to Person B stating, "We own the dental board. Call me."

4

21. On or about February 20, 2014, BURRIS sent a text message to Person C, stating, "The [ASBDE] has rolled over already and agreed with our guy that they need to rewrite the entire dental practice act. We own them. I'm kinda disappointed that they quit so soon. Pansies."

## COUNT ONE

### 18 U.S.C. § 1349
### (Conspiracy to Commit Honest Services Wire Fraud)

22. The allegations contained in Paragraphs 1 through 21 of this Indictment are re-alleged as though fully set forth herein.

23. Beginning at a time unknown but at least as early as on or about February 27, 2014, and continuing to in or about March 2017, in the Western District of Arkansas, Fayetteville Division, and elsewhere, the Defendant, **BENJAMIN GRAY BURRIS**, and Jeremy Hutchinson, did knowingly and willfully conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, that is:

    a.    to devise and intend to devise a scheme and artifice to defraud and deprive, by means of material false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud and deprive, that is, to deprive the citizens of the State of Arkansas of the honest services of a public official, namely, the honest services of Jeremy Hutchinson, an Arkansas State Senator, through bribery, in violation of 18 U.S.C. §§ 1343 and 1346;

## SCHEME TO DEFRAUD

24. Beginning at a time unknown but at least as early as on or about February 27, 2014, to in or about March 2017, in the Western District of Arkansas, Fayetteville Division and elsewhere, the Defendant, **BENJAMIN GRAY BURRIS**, Jeremy Hutchinson, and others known

and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas of the honest services of a public official through bribery; that is, to deprive the citizens of the State of Arkansas of the honest services of Jeremy Hutchinson, an Arkansas State Senator.

## PURPOSES OF THE SCHEME

25. The purposes of the scheme included, but were not limited to, the following:

   a. For Hutchinson to enrich himself by accepting bribes in exchange for using his official position as an Arkansas legislator to take official action, including, but not limited to, drafting and introducing legislation, and pressuring and influencing other legislators and members of government, to benefit BURRIS's businesses and BURRIS personally;

   b. For BURRIS, through Gateway Ventures, Burris DDS, Smile Systems, and Snaggle Tooth, to pay retainers to Hutchinson's firm, provide trips, provide rounds of golf, orthodontic services for family members, and other things of value in exchange in part for official action that would benefit BURRIS's businesses.

   c. For BURRIS and Hutchinson to conceal the corrupt nature of their relationship by entering into a retainer agreement purportedly for Hutchinson to perform only legitimate legal services when in fact, both BURRIS and Hutchinson knew that the retainer agreement was designed to cover up the fact that BURRIS was also paying Hutchinson for official acts.

## MANNER AND MEANS

26. The manner and means by which the Defendant and others known and unknown to the Grand Jury carried out the scheme included, but were not limited to, the following:

a. Hutchinson and BURRIS had an agreement whereby Hutchinson would be paid by BURRIS's companies at least in part for official action.

b. Hutchinson accepted retainers from BURRIS made payable to Hutchinson Law Firm, which were then deposited into the Hutchinson Law Firm account ending in 7635 at Arvest.

c. Hutchinson also accepted gifts from BURRIS and others at BURRIS's direction.

d. In exchange for the retainers and gifts, Hutchinson performed some legal services and used and agreed to use his official authority as an Arkansas legislator to effect and attempt to effect changes to the Dental Practices Act.

e. Hutchinson also used and agreed to use his official authority as an Arkansas legislator to advise and influence, and attempt to advise and influence, members of the Arkansas Department of Human Services to expedite the approval of Medicaid applications for physician employees of BURRIS's clinics.

f. Hutchinson and BURRIS concealed and attempted to conceal their corrupt agreement by having payments from BURRIS to Hutchinson appear to be retainer payments exclusively in furtherance of a legitimate attorney-client relationship.

g. Hutchinson and BURRIS used and caused others to use interstate wire communications to execute the scheme to defraud.

## ACTS IN FURTHERANCE OF THE SCHEME

27. In furtherance of the scheme to defraud and deprive, and to accomplish its purposes, Hutchinson and BURRIS, and others known and unknown to the Grand Jury, committed the following acts in the Western District of Arkansas and elsewhere:

7

## A. BURRIS Emails His "Legislative Objectives" to Hutchinson, and Hires and Pays Hutchinson for Official Action

a. On or about February 27, 2014, BURRIS "checked-in" on Facebook at "Arkansas State Capitol" with the comment, "Back at it!"

b. On or about February 27, 2014, BURRIS sent Hutchinson and Employee A an email with the subject "Legislative Objectives." The email contained a list titled "Legislative Objectives" that had seven items. The first item on the list was "Remove specialty restrictions because they are stupid and contrary to logic and the public good." The sixth item on the list stated, "Allow experienced hygienists to perform reversible procedures and X-ray exams without a supervising dentist."

c. On or about February 27, 2014, BURRIS, Hutchinson, Employee A, and others met for dinner at a restaurant in Little Rock, Arkansas. During the dinner, BURRIS, Hutchinson, and Employee A discussed BURRIS's legislative objectives and hiring Hutchinson. During this conversation, Hutchinson explained that "there had to be legal work." BURRIS agreed to put Hutchinson on retainer for legal services to make the payments to Hutchinson appear legitimate.

d. On or about February 28, 2014, BURRIS caused check number 2284 on the Centennial Bank account for Gateway Ventures in the amount of $20,000 to be issued to Hutchinson Law Firm.

e. On or about March 3, 2014, BURRIS sent Hutchinson and Employee A an email with the subject "Legislative Objectives—Updated March 3 2014." The email was similar to the February 27, 2014 "Legislative Objectives" email, with BURRIS stating, "I modified #6 so we have some room to compromise when they resist the [mid-level provider] program."

8

    f.  On or about March 5, 2014, BURRIS "checked-in" on Facebook at "Arkansas State Capitol" stating, "Once more into the breach!"

    g.  On or about March 5, 2014, BURRIS, Hutchinson, Employee A, and Senator A met at the Arkansas State Capitol to discuss BURRIS's legislative objectives.

    h.  On or about March 5, 2014, Hutchinson deposited the $20,000 Gateway Ventures check issued on February 28, 2014, into the Hutchinson Law Firm account at Arvest, which was settled between Centennial Bank and Arvest via an interstate wire communication.

### B. Hutchinson Takes Official Action and Relays Information to Further BURRIS's Legislative and Business Objectives

    a.  From in or about March 2014 through in or about September 2016, BURRIS continued to pay Hutchinson on roughly a monthly basis so that Hutchinson would take official action and pressure other public officials to take official action to benefit BURRIS as set forth below.

    b.  On or about March 6, 2014, BURRIS sent an email to Hutchinson, Employee A, and Senator A with the subject "Dental News, Dental education, Dental Social networking." In the email, BURRIS stated, "Information on the Mid Level Provider program in Minnesota in a dentist centric media outlet." The email contained a link to a website.

    c.  On or about March 8, 2014, BURRIS, Hutchinson, Employee A, and Senator A engaged in an email conversation. In the email conversation, BURRIS stated, in part, "Dentists who are not buddies with the state board in [Louisiana] or here in Arkansas are terrified to say or do anything against the will of the board because they can literally pass a death sentence on your business if you don't have the means to fight back." Hutchinson responded, "Wow, that's shocking. This is going to be a big issue and already has legislators I've talked to considering an entire regulatory reform package."

9

    d. On or about March 14, 2014, the ASBDE board attorney reported to the ASBDE that he met with Hutchinson regarding "possible changes to the Statute concerning specialists."

    e. On or about January 26, 2015, Hutchinson introduced Senate Bill 143 of the 90th General Assembly (SB 143), titled "AN ACT TO CLARIFY THE LAWS GOVERNING DENTAL PRACTCE."

    f. On or about February 11, 2015, Hutchinson and Employee A exchanged text messages about Hutchinson helping secure the Medicaid provider number for a physician employee at one of BURRIS's clinics. Specifically, Employee A emailed Hutchinson stating, "[Physician employee] started with us a few months ago and can't seem to get a Medicaid number. You helped before, can you again?" Hutchinson responded, "Yes, I can. Has he never received his number from my last call. I thought it was taken care of. What happened[?]"

    g. On or about February 13, 2015, Hutchinson sent a message to the Director of the Arkansas Department of Human Services, stating in part: "[T]his is Jeremy Hutchinson. I have a client and constituent (Bethel, Burris, Oliver PLLC) who is having a difficult time getting their new Medicaid number approved. They own dental and orthodontist offices around the state and were billing for all their clinics from their Fayetteville and Jonesboro office. They didn't know that was improper and have fired the girl who was in charge of billing. They formed a new PLLC and have been told that because of this issue, it may take 30-60 days to be approved. If it goes 60 days, they won't be able to make pay roll. Is there any way, we could expedite the process?"

    h. On or about February 19, 2015, Employee A sent an email to Hutchinson entitled, "Medicaid." In the email, Employee A asked, "Did you get to talk to them?"

i. On or about April 6, 2015, Hutchinson filed SB 143 as Interim Study Proposal (ISP) 2015-084 with the Senate Committee on Public Health, Welfare, and Labor.

j. On or about April 25, 2015, BURRIS emailed Hutchinson a link to an article regarding "dental-hygiene-practitioner-bills." Hutchinson responded, "Very Interesting. When would you all like to have the first meeting?"

k. On or about May 4, 2015, BURRIS forwarded an email notice of a hearing before the ASBDE on May 14, 2015, regarding an "Anesthesia Rule." Hutchinson responded, "Would you like me to attend or get people there?"

l. On or about August 10, 2015, BURRIS sent an email to Hutchinson complaining about impediments to dental licenses in Arkansas and the idea of opening a dental school in Arkansas. Hutchinson responded, "I'm getting ready to speak in public health and am going to briefly address the dental board as an example—trying to lay the foundation for our interim study."

m. On or about August 10, 2015, Hutchinson appeared before the Senate Committee on Public Health, Welfare, and Labor, during which he referenced an anti-trust lawsuit brought against the North Carolina dental board, stating that the legislature needs to insure that Arkansas's licensing boards and practice acts are "acting in such a way that they are not being anti-competitive." Hutchinson added that there were other licensing boards that he intended to ask to study.

n. On or about August 25, 2015, Employee A forwarded an email to Hutchinson entitled, "Medicaid Applications for New Doc's." Following a list of names and dates, the email read, "These are the doctors we are waiting to get sent through with Arkansas Medicaid. The dates are when we sent them the original applications."

11

o.  On or about September 22, 2015, Hutchinson filed ISP 2015-154, titled "AN ACT TO AMEND THE ARKANSAS DENTAL PRACTICE ACT; TO AMEND THE DENTAL HYGIENIST COLLABORATIVE CARE PROGRAM; TO MODIFY THE APPOINTMENTS TO THE ARKANSAS STATE BOARD OF DENTAL EXAMINERS; TO MODIFY DENTISTRY SPECIALTY LICENSES; AND FOR OTHER PURPOSES," with the Arkansas Legislative Council. ISP 2015-154 proposed to remove the specialist restriction from the Dental Practices Act, remove restrictions as to whom and in what setting a collaborative dental hygienist could provide services, and remove requirements that the Arkansas Department of Health provide permission for a dental hygienist to provide dental services as a collaborative dental hygienist.

p.  On or about September 25, 2015, Hutchinson appeared before the Arkansas Legislative Council to speak in support of ISP 2015-154. Hutchinson motioned the Arkansas Legislative Council to refer ISP 2015-154 to the Senate Committee on Public Health, Welfare, and Labor, which passed by voice vote.

q.  On or about November 4, 2015, BURRIS's chief operating officer emailed Hutchinson, asking, "Jeremy – Would you please see what can be done to get these doctor's Medicaid credentials pushed through? Thanks!" Hutchinson responded, "What r there (sic) first names again[?]" The chief operating officer replied with a list of names.

r.  On or about January 5, 2016, BURRIS sent a text message to Hutchinson stating, "Hey I need you to come visit us when you have a minute and bring me and [BURRIS's family member] and [BURRIS's business partner] up to speed on Oliver, Pickard, Medicaid, our lobbying efforts, your retainer, etc. I can fly you up if the timing works. Speaking of which an airplane is picking up [BURRIS's business partner] at SUZ Saline county airport at 2 if you want

to fly up and back today. Can you give me a call ASAP pls? Interesting times."

   s. On or about January 10, 2016, BURRIS sent an email to Hutchinson stating, "Jeremy We would like to get a list and start supporting candidates this week if possible. Can you get us a proposed list and what you advise in each case so we can review it? Thanks."

   t. On or about January 18, 2016, BURRIS sent Hutchinson a text message containing a link to a news editorial stating, "This is a huge deal." BURRIS followed up, adding, "It will be useful when we push for the legislative change."

   u. On or about April 8, 2016, BURRIS sent a text message to Hutchinson stating, "I'm in meetings all day today and tomorrow but I gotta tell you that I'm getting more and more frustrated with our arrangement." Hutchinson responded, "Really? What can I do to improve that?" BURRIS answered Hutchinson stating, "I haven't heard from you about our neighbor or about the teamlinks or about visiting with legislators about the DPA. I really need the legislature to stop the board from requiring only SRTA for dental licensure. I know you told [BURRIS's family member] about the plumber deal but that's all I heard. 5k a month at 200/hr is 25 hours. I'm happy to pay you but I need to get some ROI man like I told you a few weeks ago. If I'm missing what you're doing pls educate me." Hutchinson responded, "I've been talking to [BURRIS's family member] about the suit. I'm trying to add to the complaint that the land is yours through adverse possession but I need to know when the house was built. She was looking for that. I have asked everyone about the cost of teamlinks. No one knew but they are checking for me. I will follow up today on that." BURRIS responded, "Thanks. What can we do about the state of Arkansas restricting the dental boards they will accept for licensure." Hutchinson responded, "We have legislation that will do that. It's being heard in January of next year." BURRIS responded, "Cool."

13

   v.  On or about August 30, 2016, Hutchinson sent a text message to Representative A, an Arkansas State Representative, stating, "[Lobbyist A] asked me to see if you had everything you needed for the hearing."

   w.  On or about September 7, 2016, Hutchinson sent a text message to Representative A, stating, "Yeah, [Lobbyist A] is freaking out because [his/her] interim study isn't on the agenda for Monday. Can u call and ask that it be put on[?]"

   x.  On or about October 10, 2016, Representative A sent a text message to Hutchinson asking, "Can you get my name put on the dental ISP? Like immediately? [Representative B] says they won't adopt it because of that." Hutchinson responded, "I told [Senator B] to do that and [he/she] said staff is going to call me ASAP. [Senator B] never said that. [Representative B] is just being difficult but I will get it done"

   y.  On or about October 10, 2016, Representative A sent a text message to Hutchinson asking, "Did you need to me to present ISP-2015-084? Clarify Laws Governing Dental Practice." Hutchinson responded, "No, just the one that [Lobbyist A] wants u too."

   z.  On or about October 10, 2016, ISP-2015-154 was adopted and referred to the Health Services Subcommittee.

   aa.  On or about November 18, 2016, BURRIS sent a text to Hutchinson stating, "Why do I have to solve the problem with the neighbor? I pay you a lot of money a month for 'full service'? Dude I don't think this is working out. You never get back to us you never follow through and I'm tired of it. Get this neighbor stuff done THIS MONTH or I'm not paying you for November or ever again and I'll let the rose law firm handle it. I am tired of it Jeremy. You're a nice guy but dammit I get tired of chasing you. [BURRIS's family member] is ar (sic) her wits end. It's a full time job to chase you. Get this done or we are done. Done as of October 31."

bb. On or about January 23, 2017, ISP-2015-154 was filed as House Bill 1250 (HB 1250) and included the removal of the specialist restriction from the Dental Practices Act.

cc. On or about March 7, 2017, Hutchinson submitted to the Director of the Arkansas Secretary of the Senate a conflict disclosure form wherein Hutchinson stated in part: "Pursuant to Senate Rule 24, I am disclosing I represented a client at one time who could be affected by House Bill No. 1250. I will recuse myself from voting on this piece of legislation."

dd. On or about March 15, 2017, HB 1250 was signed into law, becoming Act 489 of 2017.

C. **BURRIS Paid Hutchinson and Provided Him with Other Things of Value in Exchange for Official Acts as Opportunities Arose and to Keep Hutchinson Available for Future Requests for Official Action**

ee. In addition to the initial $20,000 Gateway Ventures check, BURRIS issued and caused to be issued the following checks to Hutchinson from his businesses' accounts at Centennial Bank, which were deposited by Hutchinson into the Hutchinson Law Firm account at Arvest Bank, and were then settled between Centennial Bank and Arvest Bank via an interstate wire communication:

| ISSUE DATE | CHECK NUMBER | ACCOUNT | AMOUNT | DEPOSIT DATE |
|---|---|---|---|---|
| May 27, 2014 | 20546 | Burris DDS | $5,000 | May 29, 2014 |
| June 24, 2014 | 20873 | Burris DDS | $5,000 | June 25, 2014 |
| July 22, 2014 | 21225 | Burris DDS | $5,000 | July 29, 2014 |
| August 26, 2014 | 21612 | Burris DDS | $5,000 | September 2, 2014 |
| September 23, 2014 | 21872 | Burris DDS | $5,000 | September 25, 2014 |
| October 27, 2014 | 22308 | Burris DDS | $5,000 | October 30, 2014 |
| December 3, 2014 | 22718 | Burris DDS | $5,000 | December 10, 2014 |
| December 23, 2014 | 22966 | Burris DDS | $5,000 | December 29, 2014 |
| January 28, 2015 | 1332 | Snaggle Tooth | $5,000 | February 2, 2015 |
| February 25, 2015 | 1661 | Snaggle Tooth | $5,000 | March 2, 2015 |
| April 22, 2015 | 2442 | Snaggle Tooth | $5,000 | April 27, 2015 |
| May 28, 2015 | 2955 | Snaggle Tooth | $5,000 | June 3, 2015 |
| June 25, 2015 | 3375 | Snaggle Tooth | $5,000 | June 29, 2015 |

| ISSUE DATE | CHECK NUMBER | ACCOUNT | AMOUNT | DEPOSIT DATE |
|---|---|---|---|---|
| July 23, 2015 | 3769 | Snaggle Tooth | $5,000 | July 27, 2015 |
| August 27, 2015 | 4196 | Snaggle Tooth | $5,000 | August 31, 2015 |
| October 29, 2015 | 5022 | Smile Systems | $2,500 | November 9, 2015 |
| December 3, 2015 | 5474 | Smile Systems | $2,500 | December 14, 2015 |
| January 4, 2016 | 5784 | Smile Systems | $2,500 | January 15, 2016 |
| January 21, 2016 | 5992 | Smile Systems | $5,000 | January 28, 2016 |
| January 28, 2016 | 6077 | Smile Systems | $5,000 | February 2, 2016 |
| February 22, 2016 | 6354 | Smile Systems | $5,000 | March 3, 2016 |
| March 9, 2016 | 6533 | Smile Systems | $5,000 | March 16, 2016 |
| March 28, 2016 | 6725 | Smile Systems | $5,000 | April 4, 2016 |
| May 23, 2016 | 7297 | Smile Systems | $5,000 | May 27, 2016 |
| June 20, 2016 | 7579 | Smile Systems | $5,000 | June 23, 2016 |
| July 8, 2016 | 7714 | Smile Systems | $5,000 | July 15, 2016 |
| July 21, 2016 | 7867 | Smile Systems | $5,000 | July 25, 2016 |
| August 22, 2016 | 8251 | Smile Systems | $5,000 | August 24, 2016 |
| September 26, 2016 | 8646 | Smile Systems | $5,000 | November 1, 2016 |

ff. In or about June 2014, BURRIS permitted Hutchinson to use a chartered houseboat free of charge.

gg. In or about June 2014, BURRIS provided free orthodontic services to three of Hutchinson's close family members.

hh. On or about December 29, 2014, BURRIS allowed Hutchinson and one of his family members the use of a private plane to fly to Houston, Texas, to attend a college football bowl game.

ii. On or about August 9, 2015, Hutchinson and a family member played a round of golf as BURRIS's guests at Blessings Golf Course in Fayetteville, Arkansas, which is in the Western District of Arkansas.

jj. On or about October 7, 2015, BURRIS sent a text message to Hutchinson stating, "Hey I would love to take [BURRIS's business partner] and go play the Alotian golf course if you were serious about that. Also feel free to come play the blessings again with your [family member] if you want."

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH FIFTEEN
## 18 U.S.C. §§ 1343, 1346, 2
### (Honest Services Wire Fraud)

28.     The allegations contained in Paragraphs 1 through 27 of this Indictment are re-alleged as though fully set forth herein.

29.     Beginning at a time unknown but at least as early as in or about February 2014 and continuing to in or about March 2017, in the Western District of Arkansas, Fayetteville Division, and elsewhere, the Defendant, **BENJAMIN GRAY BURRIS**, Jeremy Hutchinson, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas of the honest services of a public official, namely, the honest services of Jeremy Hutchinson, an Arkansas State Senator, through bribery.

### EXECUTION OF THE SCHEME

30.     On or about the dates listed below, in the Western District of Arkansas, Fayetteville Division, and elsewhere, the Defendant, **BENJAMIN GRAY BURRIS**, and Jeremy Hutchinson, aided and abetted by each other and others known and unknown to the Grand Jury, having devised and intending to devise the above-described scheme and artifice to defraud and deprive, by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, that is, the following:

| Count | Date | Signal and Sound |
|---|---|---|
| 2 | March 3, 2014 | Electronic mail from BURRIS to Hutchinson's Yahoo email account and Employee A with the subject "Legislative Objectives – Updated March 3 2014" |

17

| Count | Date | Signal and Sound |
|-------|------|------------------|
| 3 | March 5, 2014 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $20,000 check, dated February 28, 2014, and drawn from Gateway Ventures's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 4 | March 8, 2014 | Electronic mail from Hutchinson's Yahoo email account to BURRIS, Employee A, and Senator A with the subject "Re: Louisiana Voice – Politics at its worst!" |
| 5 | June 25, 2014 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated June 24, 2014, and drawn from Burris DDS's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 6 | February 2, 2015 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated January 28, 2015, and drawn from Snaggle Tooth's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 7 | March 2, 2015 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated February 25, 2015, and drawn from Snaggle Tooth's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 8 | April 25, 2015 | Electronic mail from Hutchinson's Yahoo email account to BURRIS and Employee A with the subject "Re: Dental hygiene practitioner legislation offers health care alternative with teeth – Watchdog.org" |
| 9 | April 27, 2015 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated April 22, 2015, and drawn from Snaggle Tooth's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 10 | July 27, 2015 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated July 23, 2015, and drawn from Snaggle Tooth's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 11 | August 10, 2015 | Electronic mail from Hutchinson's Yahoo email account to BURRIS with the subject "Re: Very revealing article" |
| 12 | August 31, 2015 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated August 27, 2015, and drawn from Snaggle Tooth's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 13 | January 28, 2016 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated January 21, 2016, and drawn from Smile System's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |

| Count | Date | Signal and Sound |
|---|---|---|
| 14 | August 24, 2016 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated August 22, 2016, and drawn from Smile System's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |
| 15 | November 1, 2016 | Electronic transmission sent by Arvest Bank to settle Hutchinson Law Firm's deposit of $5,000 check, dated September 26, 2016, and drawn from Smile System's Centennial Bank, into Hutchinson Law Firm's Arvest Bank account |

All in violation of 18 U.S.C. §§ 1343, 1346, and 2.

## FORFEITURE ALLEGATION

### Honest Services Wire Fraud And Conspiracy

1. The allegations contained in Counts One through Fifteen of this Indictment and all supporting paragraphs are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), upon conviction of any of the offenses in Counts One through Fifteen, the Defendant, **BENJAMIN GRAY BURRIS**, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s). The property to be forfeited includes, but is not limited to, a money judgment.

3. If any of the property described above, as a result of any act or omission of the Defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A True Bill.


/s/ Grand Jury Foreperson
Grand Jury Foreperson


DUANE (DAK) KEES
UNITED STATES ATTORNEY

Aaron Jennen
Assistant United States Attorney
Arkansas Bar No. 2004156
414 Parker Avenue
Fort Smith, AR  72901
Telephone: 479-783-5125
E-mail: Aaron.Jennen@usdoj.gov

ANNALOU TIROL
ACTING CHIEF,
PUBLIC INTEGRITY SECTION

Sean F. Mulryne
New Jersey Bar No. 027052008
Marco Palmieri
D.C. Bar No. 981788
Trial Attorneys
United States Department of Justice
Criminal Division / Public Integrity Section
E-mail: Sean.Mulryne@usdoj.gov
E-mail: Marco.Palmieri@usdoj.gov