IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 5: 19CR 50078-001 |
| | ) | |
| BENJAMIN GRAY BURRIS | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this agreement. The agreement of the parties is as follows:

### COUNTS OF CONVICTION AND DISMISSAL

1. The Defendant, **BENJAMIN GRAY BURRIS**, hereby agrees to plead guilty to count One of the Indictment that charges him with the offense of Conspiracy to Commit Honest Services Fraud, in violation of Title 18, U.S.C. § 1349. If the Court accepts this plea agreement, once the Court has pronounced sentence, the United States will move to dismiss counts Two through Fifteen of the Indictment pending against the Defendant as well as the forfeiture allegation.

### AGREEMENT PURSUANT TO RULE 11(c)(1)(C)

2. The United States and the Defendant agree that Defendant's plea of guilty is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and that a sentence of one year and one day incarceration is the appropriate sentence in this matter. The United States and the Defendant agree that the Court shall determine in its sole discretion whether a fine should be imposed and the amount of any fine. The United States and the Defendant understand and agree that to the extent that this plea is governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure the Court may decline to accept this agreement. If the Court does not accept the agreement, the Defendant will be given the opportunity to withdraw from the plea.

### CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE

3. The Defendant acknowledges that he has been advised and understands that he has a right to have a United States District Judge presiding when he enters a guilty plea and that he can exercise that right without concern or reservation. The Defendant and the United States hereby consent to have the proceedings required by Rule 11 of the Federal Rules of Criminal Procedure incident to the making of the plea to be conducted by the United States Magistrate Judge. If, after conducting such proceedings, the Magistrate Judge recommends that the plea of guilty be accepted, a presentence investigation and report will be ordered pursuant to Federal Rule of Criminal Procedure 32. The Defendant acknowledges that his plea of guilty is subject to approval and acceptance by the District Judge and that sentencing will be conducted by the District Judge.

### WAIVER OF OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS

4. The parties acknowledge that pursuant to 28 U.S.C. § 636(b)(1)(B), the failure to file objections to the Report and Recommendation within fourteen (14) days bars them from objecting to the District Court's acceptance of the guilty plea as recommended by the Magistrate Judge. Having been advised of the right to object to the Report and Recommendation, the parties wish to waive that right for the purpose of expediting acceptance of the guilty plea in this matter. Accordingly, evidenced by their signatures appearing below, the parties hereby waive the right to object to the Magistrate Judge's Report and Recommendation Concerning Plea of Guilty, and consent to acceptance of the same by the United States District Judge so that acceptance of the guilty plea may proceed forthwith.

## ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

5.  The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime to which the Defendant is pleading guilty, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

   a. BENJAMIN GRAY BURRIS is an orthodontist who, during the relevant period, lived in Fort Smith and Fayetteville, Arkansas, which are located in the Western District of Arkansas. BURRIS was the co-owner in several businesses that operated orthodontic clinics throughout the State of Arkansas, including: Benjamin G. Burris, DDS, MDS, PA; Gateway Ventures, LLC; Oliver-Burris, LLC; Smile Systems, LLC; Snaggle Tooth Management, LLC; and Bethel Burris, PLLC (formerly Bethel Burris Oliver, PLLC). BURRIS's clinics were located throughout the state of Arkansas, including locations in the Western District of Arkansas.

   b. Jeremy Hutchinson, defendant in a related case, is a former Arkansas Senator who represented Senate District 33, after first being elected in 2010 and then re-elected in 2012 and 2014. Senate District 33 is comprised of portions of Pulaski County and Saline County, Arkansas. As a Senator, Hutchinson had the responsibility and authority to, among other things, draft and vote on proposed bills and legislation, and request interim study proposals. As a Senator, Hutchinson owed a duty to provide honest services to the State of Arkansas and its citizens. Prior to his service in the Arkansas Senate, Hutchinson served as a Representative of House District 31 in the Arkansas House of Representatives from 2000 to 2007. Because Arkansas legislators serve on a part-time basis, Hutchinson was permitted to and did maintain outside employment. Hutchinson was an attorney licensed in the State of Arkansas. Hutchinson operated his own law firm, Hutchinson Law Firm, as a sole proprietorship.

   c. On or about February 27, 2014, BURRIS, Hutchinson, Employee A, and others met for dinner at a restaurant in Little Rock, Arkansas. During the dinner, BURRIS, Hutchinson, and Employee A discussed BURRIS's legislative objectives and the prospect of hiring Hutchinson. During this conversation, Hutchinson stated that as part of the arrangement that there needed to be real legal work. BURRIS agreed that he expected Hutchinson to perform legal work assigned to him and discussed some pending legal matters. From February 2014 to in or about November 2016, the BURRIS-affiliated entities listed above paid Hutchinson Law Firm an approximate total of $157,500, at a rate of approximately $5,000 per month.

   d. During the course of Hutchinson's engagement, BURRIS and his businesses tasked Hutchinson with performing legal services. Hutchinson was compensated for those services under a general retainer agreement, which was and is an arrangement permitted under Arkansas law. Nevertheless, part of BURRIS's intent in hiring

Hutchinson was to enable BURRIS to influence and request official action from Hutchinson on legislative issues and various official matters as the need arose, and he did so on numerous occasions during the course of the engagement. As part of the benefits to Hutchinson for his assistance with official acts, BURRIS also provided Hutchinson with free braces for his children.

e. Prior to 2017, an Arkansas law known as the Dental Practices Act stated that any dentist licensed by the Arkansas State Board of Dental Examiners (ASBDE) as a specialist, such as an orthodontist, "must limit his or her practice to the specialty in which he or she is licensed except in an emergency situation," and that "failure to limit his or her practice ... shall be cause for the specialist license to be revoked or suspended." A.C.A. § 17-82-305(g) (2003). This restriction imposed by the Dental Practices Act was often known as a specialist restriction.

f. On or about February 27, 2014, BURRIS sent HUTCHINSON and Employee A an email with the subject "Legislative Objectives." The email contained a list titled "Legislative Objectives" that had seven items. The first item on the list was "Remove specialty restrictions because they are stupid and contrary to logic and the public good." The sixth item on the list stated, "Allow experienced hygienists to perform reversible procedures and X-ray exams without a supervising dentist." The seventh item set forth a proposed "Dental Patients' Bill of Rights," including that "every dental patient has the right to access affordable, quality dental care in a clean, safe, friendly environment."

g. On or about March 3, 2014, BURRIS sent Hutchinson and Employee A an email with the subject "Legislative Objectives-Updated March 3 2014." The email was similar to the February 27, 2014 "Legislative Objectives" email, with BURRIS stating, "I modified #6 so we have some room to compromise when they resist the [mid-level provider] program."

h. On or about January 26, 2015, Hutchinson introduced Senate Bill 143 of the 90th General Assembly (SB 143), titled "AN ACT TO CLARIFY THE LAWS GOVERNING DENTAL PRACTICE." SB 143 was a "shell bill," which contained no substance.

i. On or about April 6, 2015, Hutchinson filed SB 143 as Interim Study Proposal (ISP) 2015-084 with the Senate Committee on Public Health, Welfare, and Labor.

j. On or about August 10, 2015, BURRIS sent an email to Hutchinson complaining about impediments to dental licenses in Arkansas and the idea of opening a dental school in Arkansas. Hutchinson responded, "I'm getting ready to speak in public health and am going to briefly address the dental board as an example-trying to lay the foundation for our interim study."

k. On or about August 10, 2015, Hutchinson appeared before the Senate Committee on Public Health, Welfare, and Labor, during which he referenced an anti-trust lawsuit brought against the North Carolina dental board, stating that the legislature needs to ensure that Arkansas's licensing boards and practice acts are "acting in

such a way that they are not being anti-competitive." Hutchinson added that there were other licensing boards that he intended to ask to study.

l. On or about September 22, 2015, Hutchinson filed ISP 2015-154, titled "AN ACT TO AMEND THE ARKANSAS DENTAL PRACTICE ACT; TO AMEND THE DENTAL HYGIENIST COLLABORATIVE CARE PROGRAM; TO MODIFY THE APPOINTMENTS TO THE ARKANSAS STATE BOARD OF DENTAL EXAMINERS; TO MODIFY DENTISTRY SPECIALTY LICENSES; AND FOR OTHER PURPOSES," with the Arkansas Legislative Council. ISP 2015-154 proposed to remove the specialist restriction from the Dental Practices Act, remove restrictions as to whom and in what setting a collaborative dental hygienist could provide services, and remove requirements that the Arkansas Department of Health provide permission for a dental hygienist to provide dental services as a collaborative dental hygienist.

m. On or about January 5, 2016, BURRIS sent a text message to Hutchinson stating, "Hey I need you to come visit us when you have a minute and bring me and [Person D] and [Person E] up to speed on [legal matter], [legal matter], Medicaid, our lobbying efforts, your retainer, etc. I can fly you up if the timing works. Speaking of which an airplane is picking up [another individual] at SUZ Saline county airport at 2 if you want to fly up and back today. Can you give me a call ASAP pls? Interesting times."

n. On or about April 8, 2016, BURRIS sent a text message to Hutchinson stating, "I'm in meetings all day today and tomorrow but I gotta tell you that I'm getting more and more frustrated with our arrangement." Hutchinson responded, "Really? What can I do to improve that?" BURRIS answered Hutchinson stating, "I haven't heard from you about [legal matter] or about the teamlinks or about visiting with legislators about the DPA. I really need the legislature to stop the board from requiring only SRTA for dental licensure. I know you told [Person D] about the plumber deal but that's all I heard. 5k a month a 200/hr is 25 hours. I'm happy to pay you but I need to get some ROI man like I told you a few weeks ago. If I'm missing what you're doing pls educate me." Hutchinson responded, "I've been talking to [Person D] about the suit. I'm trying to add to the complaint that the land is yours through adverse possession but I need to know when the house was built. She was looking for that. I have asked everyone about the cost of teamlinks. No one knew but they are checking for me. I will follow up today on that." BURRIS responded, "Thanks. What can we do about the state of Arkansas restricting the dental boards they will accept for licensure." Hutchinson responded, "We have legislation that will do that. It's being heard in January of next year." BURRIS responded, "Cool."

o. On or about January 23, 2017, ISP-2015-154 was filed as House Bill 1250 (HB 1250) and included the removal of the specialist restriction from the Dental Practices Act. HB 1250 was the product of an agreement reached by a trade association with interest in the legislation and the Arkansas State Dental Association after BURRIS and Hutchinson abandoned the effort in the fall of 2016.

p. On or about April 28, 2017, the sale of BURRIS's businesses closed. The executed agreement included a provision that prevented BURRIS from practicing in Arkansas, and he moved to Florida soon thereafter. He has not practiced in Arkansas since that time, and thus the amended Dental Practices Act, which resulted from HB1250 and was signed into law on or about March 15, 2017, did not affect BURRIS financially.

## ADVICE OF RIGHTS

6. The Defendant hereby acknowledges that he has been advised of and fully understands the following constitutional and statutory rights:

   a. to have an attorney and if the defendant cannot afford an attorney, to have one provided to him and paid for at the United States' expense;
   b. to persist in his plea of not guilty;
   c. to have a speedy and public trial by jury;
   d. to be presumed innocent until proven guilty beyond a reasonable doubt;
   e. to confront and examine witnesses who testify against him;
   f. to call witnesses on his behalf;
   g. to choose to testify or not testify and that no one could force the Defendant to testify; and,
   h. to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

7. The Defendant hereby acknowledges that he understands with respect to the count to which he pleads guilty, he thereby WAIVES all of the rights listed in (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

8. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

9. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. §3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF
## THIS AGREEMENT BY DEFENDANT

10. The Defendant agrees that if after signing this plea agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or if the Defendant violates any term of this plea agreement, takes a position at sentencing which is contrary to the terms of this plea agreement or attempts to withdraw from this plea agreement, this shall constitute a breach of this plea agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this agreement, and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

11. The Defendant further agrees that a breach of any provision of this plea agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the government shall be allowed to use and to introduce into evidence any one or more of the following:

    a. admissions against interest, both oral and written, made by the Defendant to any person;
    b. statements made by the Defendant during his change of plea hearing;
    c. the factual basis used at the change of plea hearing;
    d. any testimony given under oath to a grand jury or petit jury;
    e. any and all physical evidence of any kind which the Defendant has provided to the government; and

    f. any and all information provided by the Defendant to the government's attorneys, or to federal, state, county, and/or local law enforcement officers.

## STIPULATIONS

12. The United States and the Defendant hereby agree and stipulate that the base offense level enhancements contained in U.S.S.G. § 2C1.1(b)(1) (multiple bribes) and U.S.S.G. § 2C1.1(b)(3) (offense involving elected official) apply in this case.

13. If the Court deems it necessary under the circumstances, the United States and the defendant stipulate that if this Plea Agreement is accepted that a variance under 18 U.S.C. § 3553(a) and/or a departure under U.S.S.G. § 5K2.0 would be appropriate.

14. The United States and the Defendant stipulate that the conduct underlying the conviction does not fall under Title 42 U.S.C. §§ 1320a-7a and b.

## MAXIMUM PENALTIES

15. The Defendant hereby acknowledges that he has been advised of the maximum penalties for the count to which he is pleading guilty. By entering a plea of guilty to count One of the Indictment, the Defendant agrees that he faces:

    a. a maximum term of imprisonment for twenty years;
    b. a maximum fine of $250,000;
    c. both imprisonment and a fine;
    d. a term of supervised release for not more than 3 years which begins after release from prison;
    e. a possibility of going back to prison if the defendant violates the conditions of supervised release; and
    f. a special assessment of $100.00.

## CONDITIONS OF SUPERVISED RELEASE

16. The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special

conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

    a. The Defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different time frame.
    b. After initially reporting to the probation office, the Defendant will receive instructions from the Court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.
    c. The Defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the Court or the probation officer.
    d. The Defendant shall answer truthfully the questions asked by the probation officer.
    e. The Defendant shall live at a place approved by the probation officer. If the defendant plans to change where he lives or anything about his living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
    f. The Defendant shall allow the probation officer to visit the Defendant at any time at his home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the Defendant's supervision that he or she observes in plain view.
    g. The Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the Defendant does not have full-time employment, he shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about his work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
    h. The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.
    i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours.
    j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.
l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.
m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

### AGREEMENT TO PROVIDE FINANCIAL INFORMATION

17. The Defendant agrees that no later than thirty (30) days after the change of plea, the Defendant shall complete the financial disclosure statement and the accompanying releases provided by the United States Attorney's Office and deliver them to the United States Probation Office and the United States Attorney's Office. This financial disclosure statement is sworn by the Defendant to be true and correct under penalty of perjury. The Defendant agrees that his failure to truthfully and fully complete the financial disclosure statement and accompanying releases may result in the government objecting to the Defendant receiving a reduction for acceptance of responsibility.

### PAYMENT OF MONETARY PENALTIES

18. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

19. The United States agrees that no other federal charges, which stem from activities described in the Indictment, will be brought against the Defendant in the Western or Eastern Districts of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

20. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines.

## RELEVANT CONDUCT CONSIDERED

21. At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character, and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

22. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this plea agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE GOVERNMENT

23. The United States agrees to recommend that the Defendant be sentenced to a term of confinement for a period of one year and one day pursuant to the terms of this agreement and Rule 11(c)(l)(C) of the Federal Rules of Criminal Procedure. The parties

acknowledge that there is no agreement concerning the length of supervised release or amount of fine to be imposed.

24. The United States agrees not to object to a finding by the probation office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater, and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the government will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following: a) falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, or gives conflicting statements about that involvement, c) is untruthful with the government, the Court, or probation officer, or d) materially breaches this plea agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

25. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

   a. make all facts known to the Probation Office and to the Court;
   b. call witnesses and introduce evidence in support of the Presentence Report;
   c. contest and appeal any finding of fact or application of the Sentencing Guidelines;
   d. contest and appeal any departure from the appropriate Guideline range; and,
   e. defend all rulings of the Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this plea agreement which are favorable to the Defendant.

## RIGHT TO WITHDRAW THE GUILTY PLEA

26. The parties' agreement on sentencing is binding and made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the plea agreement, the Defendant will have the right to withdraw the guilty plea.

## DISMISSAL OF COUNTS

27. The United States' agreement to dismiss counts Two through Fifteen of the Indictment is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the United States' motion to dismiss the remaining counts of the Indictment, the Defendant shall be afforded the right to withdraw his plea pursuant to Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

28. The parties agree that this plea agreement does not bind any governmental entity other than the United States Attorneys' Offices for the Western and Eastern Districts of Arkansas.

## SPECIAL ASSESMENT

29. The Defendant agrees that he will pay $100.00 as the special assessment in this case.

## REPRESENTATIONS BY THE DEFENDANT

30. By signing this Plea Agreement, the Defendant acknowledges that:

    a. The Defendant has read this agreement (or has had this agreement read to him) and has carefully reviewed every part of it with defense counsel.
    b. The Defendant fully understands this plea agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this plea agreement.
    c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this plea agreement.
    d. The Defendant is satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it.
    e. The Defendant has entered into this plea agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty

is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

31. By signing this plea agreement, counsel for the Defendant acknowledges that:

   a. Counsel has carefully reviewed every part of this agreement with the Defendant and this agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.
   b. Counsel has explained the ramifications of the plea agreement to the Defendant, and believes that the Defendant understands this plea agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.
   c. Counsel believes that the Defendant's decision to enter into this agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

32. The Defendant and his attorney both acknowledge that this plea agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this 13 day of September, 2021.

_____
Benjamin Gray Burris
Defendant

DAVID CLAY FOWLKES
ACTING UNITED STATES ATTORNEY

_____
Bill Athanas
Attorney for the Defendant

_____
Benjamin Wulff
Assistant United States Attorney

Page **14** of **14**